UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| CLEAR TRANSFER TECHNOLOGIES OU,<br><br>        Plaintiff,<br><br>      -vs-<br><br>IPAY TOTAL LTD.; IPAY SOLUTIONS, INC.;<br>BRIAN KEITH ANGEL; RUCHI RATHOR;<br>AND ANURAG PRATAP SINGH,<br><br>        Defendants. | CASE NO: _____ |

Plaintiff Clear Transfer Technologies OU ("**Clear Transfer**"), by and through undersigned counsel, sues defendants iPay Total Ltd. and iPay Solutions, Inc. (collectively, "iPay"), Brian Keith Angel ("Angel"), Ruchi Rathor ("Rathor") and Anurag Pratap Singh ("Singh") (Angel, Rathor and Singh together are the "Individual Defendants"), as follows:

## NATURE OF ACTION

1. Clear Transfer and iPay entered into a Service Level Agreement (the "**Agreement**") effective October 16, 2019, pursuant to which Clear Transfer retained iPay to provide it with payment processing services. Clear Transfer performed its obligations under the Agreement, including complying with the procedures for accepting credit card payments and security obligations. iPay failed to perform its obligations under the Agreement by failing and refusing to remit payment to Clear Transfer within the time specified in the Agreement.

2. Moreover, Angel fraudulently misrepresented to Clear Transfer that Clear Transfer's transactions were undergoing an audit as the reason iPay was improperly withholding funds belonging to Clear Transfer. Upon information and belief, no such audit was undertaken, and Angel misrepresented the purported fact of an ongoing audit to fraudulently refuse to remit payment to Clear Transfer.

3. When Clear Transfer demanded proof of the claimed audit and demanded iPay remit payment, iPay and Angel ceased communicating with Clear Transfer, dissolved itself in Florida, and commenced proceedings in the United Kingdom to dissolve itself in that jurisdiction. In doing so, iPay and the Individual Defendants fraudulently and criminally misrepresented to UK authorities that the iPay is not indebted to any party and had no creditors

4. As a result of iPay's material breach of the Agreement and the Individual Defendants', including Angel's, fraudulent misrepresentations, Clear Transfer brings this action to recover the amounts due under the Agreement, and all applicable interest.

**PARTIES, JURISDICTION AND VENUE**

5. Clear Transfer is corporation registered, formed, and existing under the laws of Estonia.

6. iPay Solutions, Inc., was a Florida profit corporation, a wholly owned subsidiary of iPay Total Ltd., with its principal address and place of business in Duval County, Florida. Angel is its President.

7. Angel is a resident of Duval County, Florida.

8. Upon information and belief, Rathor is a Director of iPay, and a citizen and resident of India.

9. Upon information and belief, Singh is a Director of iPay, a citizen of India, and resident of the UK.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (a)(2) because the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees, and there is complete diversity of citizenship.

11. This Court has personal jurisdiction over iPay because it was a Florida corporation, with its principal address and place of business in Duval County, Florida, doing business in this state.

12. This Court has personal jurisdiction over (i) Angel because he is a resident of Duval County, Florida and (ii) Rathor and Singh because they have sufficient minimum contacts in Florida subjecting them to personal jurisdiction.

13. Venue is proper pursuant to 28 U.S.C. § 1391, as the causes of action accrued within Duval County.

## FACTS

14. Effective October 16, 2019, Clear Transfer and iPay entered into the Agreement. Pursuant to the Agreement, iPay agreed to provide Clear Transfer with payment processing services. Pursuant to the Agreement, iPay agreed to settle funds on a weekly basis with Clear Transfer utilizing the bank account information provided by each party (the "**Settlement Payments**").

15. On December 9, 2019, iPay processed the first transaction on behalf of Clear Transfer. On January 10, 2020, Clear Transfer received the settlement report (the "**Settlement Report**") from iPay. The Settlement Report itemized the funds Clear Transfer was entitled to receive from iPay for the period December 1, 2019 through December 21, 2019. According to the Settlement Report, Clear Transfer was entitled to receive the total amount of EUR 3,531 (the "**Amount Owed**").

16. Following Clear Transfer's receipt of the Settlement Report, on January 16, 2020, iPay's finance department represented to Clear Transfer that the Amount Owed would be transferred to Clear Transfer's bank account within "a few days."

17. iPay represented to Clear Transfer that its bank is located within the EU, specifically Germany. Because Clear Transfer's bank is also located within the

EU, Clear Transfer reasonably expected that iPay would transfer the Amount Owed within two to three business days.

18. iPay never transferred, and Clear Transfer never received, the Amount Owed.

19. On January 19, 2020, Clear Transfer contacted an iPay representative for an update on the transfer of the Amount Owed. iPay assured Clear Transfer that it would receive the Amount Owed no later than January 22, 2020. iPay failed to transfer the Amount Owed to Clear Transfer by January 22, 2020 as represented.

20. On January 22 and 23, 2020, Clear Transfer contacted iPay several times by Skype inquiring about the status of payment of the Total Owed. iPay failed to respond to any of Clear Transfer's inquiries.

21. Because of iPay's failure to respond, on January 24, 2020, Clear Transfer again contacted iPay via Skype. Clear Transfer managers, including Clear Transfer's banking relationship manager, participated in a group chat with iPay's Director Mehul Sakaria and Angel.

22. During the Skype call, Angel represented to Clear Transfer that the delay in transferring the Amount Owed was because iPay's bank (the "**Bank**") purportedly requested further information about Clear Transfer because transactions involving Clear Transfer were "flagged." After making this representation, Angel left

the Skype chat group. Clear Transfer immediately provided iPay with the information its Bank purportedly requested.

23. From December 22, 2019 to January 23, 2020, iPay successfully processed additional transactions on Clear Transfer's behalf in the aggregate amount of USD 121,634. Including the Amount Owed, Clear Transfer is owed, and iPay is improperly withholding, USD 121,634 (the "**Total Owed**").

24. Toward the end of January 2020, Clear Transfer received another settlement report from iPay for the period December 22, 2019 to January 23, 2020 (the "**2nd Settlement Report**").

25. Notwithstanding, iPay failed and refused to remit payment of the Total Owed.

26. Clear Transfer's numerous attempts to obtain payment of the Total Owed from iPay have resulted in dismissive, vague, and evasive responses by iPay:

(a) By e-mail dated January 24, 2020, Angel claimed that the Bank decided to conduct an audit that would take approximately three weeks. Clear Transfer requested that iPay provide evidence of the Bank's purported audit, but iPay has failed and refused to provide any documents or other evidence concerning the purported Bank audit.

(b)     On January 28, 2020, Clear Transfer contacted iPay by Skype seeking an update on payment of the Total Owed and spoke with Rathor.  Rathor stated that: "The reports have been forwarded from risk to the administration.  No negative feedback till now, everything looks good.  We will get the next update today."

(c)     On January 29 and 30, 2020, Clear Transfer followed up with iPay for an update but did not receive any response.

(d)     On January 31, 2020, in response to Clear Transfer's further request for an update, iPay representative Jason Smith ("Smith") replied: "I will update you on the same either on Monday or latest by Tuesday."

(e)     On February 3, 2020, Smith noted that "there is no negative feedback on your account but the wait time showing on the acquiring system for activation is 12-15 days."

(f)     Clear Transfer contacted iPay by telephone and email on February 4, 5, 10, and 11, 2020.  Clear Transfer did not receive any response from iPay.

(g)     On February 12, 2020, an iPay representative sent Clear Transfer a file (the "**File**") from a bank located in Ghana.  This shocked and alarmed Clear Transfer because iPay previously represented that its bank was located in the EU.  iPay claimed the File established that iPay was being audited by the Bank.  The File established no such thing.  The File provided no information or reference to iPay, iPay's

account, Clear Transfer, or Clear Transfer's account, and did not contain any information establishing the Bank was auditing Clear Transfer.

(h) Thereafter, by Skype chat on February 12, 2020, recognizing the File did not establish iPay's claim of an audit, Angel admitted that iPay did not have any documentation substantiating its claim that the Bank was auditing Clear Transfer. Despite this admission, Angel preposterously continued to represent that the Bank was conducting an audit and stated it would be concluded soon.

(i) Also on February 12, 2020, Clear Transfer officer Harel Sekler communicated with Angel by Skype. During this call, Angel told Sekler that iPay's offices are virtual, and that iPay has no physical space from which it operates. Angel also told Sekler that iPay's employees are located in India and the Philippines. Once again, Clear Transfer was shocked and alarmed by this new and contradictory information. The Agreement expressly represents that iPay's principal place of business is located in England. There is no mention in the Agreement or anywhere else of iPay having locations or employees in India or the Philippines.

(j) By telephone on February 12, 2020, and again by email dated March 10, 2020, iPay claimed that its role is limited to acting as an intermediary agent for Clear Transfer. However, the Agreement clearly specifies iPay's role as providing Clear Transfer with the interface for all transaction processing services.

27. By letter dated March 9, 2020, (the "**Demand Letter**"), Clear Transfer demanded iPay remit the Total Owed. By e-mail dated March 10, 2020, iPay responded to the Demand Letter, but failed and refused to remit the Total Owed. By e-mail dated March 12, 2020, Clear Transfer noted iPay's failure to address the issues in its Demand Letter in any meaningful way, or to provide any support for its audit claims. iPay thereafter ceased communicating with Clear Transfer and has not remitted the Total Owed.

28. Notably, after receiving the Demand Letter, iPay removed all references to iPay's Florida and New York locations from its website. Rather, iPay lists an address in Delaware which is nothing but a mail drop. The website also lists a UK address which likewise appears to be nothing but a maildrop.

29. To date, and in material breach of the Agreement, iPay has failed and refused to remit payment of the Total Owed to Clear Transfer.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – iPay)**

30. Clear Transfer repeats and realleges the allegations set forth in paragraphs 1 through 29 of this Complaint as if set forth at length herein.

31. In material breach of the Agreement, specifically and without limitation Section 4, iPay failed and refused to remit payment of the Total Owed to Clear Transfer within the contractually required time period.

32. iPay owes Clear Transfer not less than USD 121,934, pursuant to the Agreement. iPay's failure and refusal to remit payment to Clear Transfer constitutes a material breach of the Agreement.

33. By virtue of the foregoing, Clear Transfer is entitled to judgment against iPay for not less than USD 121,934, plus all applicable interest.

## SECOND CAUSE OF ACTION
### (Specific Performance – iPay)

34. Clear Transfer repeats and realleges the allegations set forth in paragraphs 1 through 33 of this Complaint as if set forth at length herein.

35. In material breach of the Agreement, specifically and without limitation Section 4, iPay failed to remit payment of the Total Owed to Clear Transfer within the contractually required time period.

36. Pursuant to the Agreement, Clear Transfer performed all material obligations and is entitled to receipt of not less than USD 121,934. iPay has failed and refused to remit payment to Clear Transfer.

37. By virtue of the foregoing, Clear Transfer is entitled to judgment directing iPay to transfer not less that USD 121,934 to Clear Transfer, plus all applicable interest.

## THIRD CAUSE OF ACTION
### (Fraud – iPay and the Individual Defendants)

38. Clear Transfer repeats and realleges the allegations set forth in paragraphs 1 through 37 of this Complaint as if set forth at length herein.

39. Pursuant to the Agreement, iPay agreed to remit Settlement Payments on a weekly basis to Clear Transfer.

40. Clear Transfer reasonably relied to its detriment on iPay's and the Individual Defendants' material misrepresentations in the Agreement to engage and use iPay for Clear Transfer's payment processing services.

41. iPay and the Individual Defendants misrepresented that the location of iPay's bank was in Germany. Rather, iPay's bank is located in Ghana.

42. iPay and the Individual Defendants misrepresented that its offices are virtual, that it has no physical offices, and that its employees are located in India and the Philippines. The Agreement and iPay's website explicitly state that iPay's principal place of business is located in England, with a location in Florida.

43. iPay and the Individual Defendants misrepresented that its role is limited to acting as an intermediary agent for Clear Transfer. Rather, the Agreement clearly specifies iPay's role as providing Clear Transfer with the interface for all transaction processing services.

44. If Clear Transfer had known the true facts it would not have retained iPay as its payment processor.

45. Clear Transfer utilized iPay's payment processing services during the period October 16, 2019 to January 23, 2020, and reasonably expected payment of USD 121,934, the Total Owed.

46. iPay failed and refused to remit payment of the Total Owed to Clear Transfer.

47. By virtue of the foregoing, Clear Transfer is entitled to judgment against iPay and the Individual Defendants for USD 121,934, and all applicable interest. Plaintiff reserves the right to seek leave of court to assess punitive damages against Defendants.

**FOURTH CAUSE OF ACTION**
**(Fraud – Angel)**

48. Clear Transfer repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if set forth at length herein.

49. On January 24, 2020, Angel misrepresented, without supporting documentation or evidence, that the Bank was conducting an audit of Clear Transfer that would take approximately three weeks. Angel misrepresented that the Bank decided to conduct the purported audit based on alleged "Flagged Transactions," "Refund Requests," "Suspected Fraud," and "Email Communications from Consumers

stating Dissatisfaction." Angel further misrepresented, "We assure you at the end of this audit, that you will receive your due funds."

50. Clear Transfer immediately provided iPay with the information purportedly requested by the Bank.

51. On January 27, 2020, Angel misrepresented, without any supporting documentation or evidence, that the audit was a "predetermined audit." Angel further misrepresented, "Once the audit review is completed, all restrictions are removed, the settlements are disbursed and the mid reinstated for normal card processing."

52. On February 3, 2020, iPay representative Smith stated that "there is no negative feedback on your account but the wait time showing on the acquiring system for activation is 12-15 days."

53. Angel falsely represented that the Bank was initiating or conducting an audit.

54. On February 12, 2020, an iPay representative sent Clear Transfer the purported File from a bank located in Ghana, claiming it proved that iPay was being audited by the Bank. The File contained no information concerning iPay, iPay's account, Clear Transfer, or Clear Transfer's account or any purported audit.

55. Angel, and iPay, falsely misrepresented that an audit was being initiated or conducted. Angel caused iPay to improperly withhold the Total Owed.

56. Further, after receiving the Demand Letter, Angel caused iPay's Florida entity to dissolve itself. The principal address for iPay's former Florida entity is also Angel's home address.

57. Angel knew the foregoing representations were false when made and made them with the intent to deceive Clear Transfer of iPay's capabilities as a payment processor and to improperly withhold funds due to Clear Transfer pursuant to the Agreement

58. Clear Transfer reasonably relied on Angel's misrepresentations that an audit was being conducted and that upon conclusion of the audit that the Total Owed would be transferred.

59. iPay has failed to transfer the Total Owed to Clear Transfer.

60. By virtue of the foregoing, Clear Transfer is entitled to judgment against Angel for USD 121,934., and all applicable interest. Plaintiff reserves the right to seek leave of court to assess punitive damages against Defendants.

WHEREFORE, Clear Transfer demands judgment in its favor and against Defendants (i) on the first cause of action, against iPay, in the amount of not less than $121,934., plus applicable interest; (ii) on the second cause of action, against iPay, in the amount of not less than $121,934., plus applicable interest; (iii) on the third cause of action, against iPay and the Individual Defendants, in the amount of not less than $121,934., plus applicable interest; (iv) on the fourth cause of action against Angel, in the amount of not less than $117,294., plus applicable interest; and (v) for costs, disbursements, attorneys' fees, and such other further and different relief as the Court deems just, proper, and equitable.  Plaintiff reserves the right to seek leave of court to assess punitive damages against Defendants.

Dated:   February 1, 2021

Respectfully submitted,

*/s/ Michael D. Starks, Esq.*
MICHAEL D. STARKS
Florida Bar No. 0086584
Email: mds2@lgplaw.com
Liebler, Gonzalez & Portuondo
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Phone: (305) 379-0400
Fax: (305) 379-9626